## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **WILLIAM I. MARSHALL, pro se**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   **CIVIL ACTION NO. 15-0458-CG-C** |
| | ) |
| **QUINCY COMPRESSOR, LLC,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Defendant's motion for summary judgment (Doc. 27), Plaintiff's motion for summary judgment and opposition to Defendant's motion (Doc. 31), Plaintiff's second motion for summary judgment and additional opposition to Defendant's motion (Doc. 38), Defendant's response to Plaintiff's filings (Doc. 39), and Plaintiff's reply (Doc. 40). For reasons that will be explained below, the Court finds that Plaintiff has not established a prima facie case of discriminatory discharge and has not shown that Defendant's proffered non-discriminatory reason for terminating Plaintiff was merely pretext. Accordingly, Defendant's motion for summary judgment will be granted and Plaintiff's motions for summary judgment will be denied.

### FACTS

Plaintiff, William I. Marshall, filed this action pro se, stating that he had filed an EEOC complaint against his employer, Quincy Compressor, LLC, when he was terminated from his job on June 27, 2014, while he had a shoulder injury. (Doc. 1). The Complaint in this case states that Plaintiff's doctor had limited him to lifting

15 pounds and Plaintiff was put in a position where he would have to lift 45 to 50 pounds. The Complaint alleges that another employee, "Robert Lee", was asked to help Plaintiff, but refused and went to the office and complained that Plaintiff did not want to work with him. Plaintiff alleges that he told them he had documentation that he was limited to lifting 15 pounds, but they told him to sign a statement that he needed counseling to be able to get along with people. Plaintiff's Complaint states that he refused to sign the document and was told by "the Plant Manager, John Dow,"[1] that if he did not sign the document they would consider Plaintiff to have quit his job. The Complaint also asserts that Plaintiff needs surgery and that the company failed to help Plaintiff get further medical treatment.

Plaintiff's EEOC charge, dated July 14, 2014, alleged that he was discriminated against on the basis of his disability. (Doc. 29-3, p. 37). In his EEOC charge, Plaintiff stated that he experienced pain in his shoulder while at work on Wednesday, June 25, 2016, and he told his supervisor and the safety director about it. (Doc. 29-3, p. 38). The pain was in the same shoulder Plaintiff previously had surgery on in 2011. (Doc. 29-3, p. 38). The EEOC charge then details the incident between Plaintiff and the other employee that occurred the next day, on June 26, 2016, and describes how he was terminated for not signing a document that was created by the company and that warns Plaintiff to go to counseling. (Doc. 29-3, p. 38).

In support of its motion for summary judgment, Defendant submitted

---

[1] The Court presumes that "John Dow" is actually John Daw, the Vice President of Manufacturing at Quincy Compressor. See (Doc. 29-4, ¶ 11)

portions of Plaintiff's deposition testimony and the declaration of Elizabeth Byrd,

the Materials Manager for Quincy Compressor at its facility in Bay Minette,

Alabama. (Docs. 29-1, 29-2, 29-3, 29-4). Plaintiff submitted no deposition or

affidavit evidence, but provided copies of correspondence and court notices

regarding the scheduling of Plaintiff's deposition, correspondence with Liberty

Mutual, and medical records dating from July 2011 – March 2012 and February

2015 – August 2015. As will be discussed further below, the information contained

in the documents submitted by Plaintiff is irrelevant to the merits of Plaintiff's ADA

claim for discriminatory discharge on June 27, 2014. Thus, the following facts were

supplied entirely from the evidence submitted by Defendant.[2]

Plaintiff began working for the Defendant Company, Quincy Compressor in

2005. (Doc. 29-1, pp. 9-10). On numerous occasions during his employment there,

Plaintiff asked to be moved from one position to another because of conflicts with co-

---

[2] "In opposing a motion for summary judgment, a 'party may not rely on his pleadings to avoid judgment against him.'" Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995), cert. denied sub nom., Jones v. Resolution Trust Corp., 516 U.S. 817 (1995)(citing Ryan v. Int'l Union of Operating Eng'rs., Local 675, 794 F.2d 641, 643 (11th Cir. 1986)). Moreover, " [t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint [or answer] but not relied upon in summary judgment are deemed abandoned." Id. at 599 (citations omitted). While the court must interpret all questions of fact in the plaintiff's favor at the summary judgment phase of litigation, there must be alleged facts and evidence on the table in order for the court to interpret them to plaintiff's benefit. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (The non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."); Vega v. Invsco Group, Ltd., 2011 WL 2533755 at *2 (The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial.").

workers and he continued to have problems working with others. (Doc. 29-1, pp. 24-25, 33-35; Doc. 29-2, pp. 3-4; Doc. 29-4, ¶ 3).  Performance reviews in 2007 and 2013 noted Plaintiff's inability to cooperate or work with others and in July of 2013, Plaintiff was verbally counseled for arguing with a coworker and Team Leader. (Doc. 29-4, ¶ 4).  Plaintiff acknowledges there were many disputes but denies any wrongdoing. (Doc. 29-1, p. 39; Doc. 29-2, pp. 16-20, 35, 37-39).  Plaintiff's co-workers claimed that Plaintiff was the problem. (Doc. 29-2, p. 18).

Plaintiff suffered an injury to his right shoulder in 2011 and had surgery on the shoulder in 2011. (Doc. 29-1; Doc. 29-3, p. 28).  After the surgery, on September 29, 2011, Plaintiff's doctor released him to light duty, restricting Plaintiff from lifting more than 15 pounds and from overhead lifting. (Doc. 29-1, p. 54, Doc. 29-3, p. 29).  On January 12, 2012, Plaintiff was released to full duty by his physician on a trial basis. (Doc. 29-3, pp. 30-31).  At Plaintiff's follow up visit on February 9, 2012, the doctor noted Plaintiff was doing well, his pain was controlled, his wound was benign, his range of motion was full, his strength was normal, and that he had tolerated his return to duty. (Doc. 29-3, p. 32).  Plaintiff's physician sent a work status report stating that Plaintiff was released to full duty. (Doc. 29-1, p. 78; Doc. 29-3, p. 33).  Plaintiff never presented any medical restrictions for his shoulder after February 2012 and according to supervisor Byrd, Plaintiff was assumed to be fully capable to perform all duties. (Doc. 29-4, ¶ 14).

In June 2014, Plaintiff was working as a Wirer with another employee, Robert Lee Jones. (Doc. 29-2, pp. 25-27).  Jones was a better Wirer because he had

been doing it longer and had trained Plaintiff. (Doc. 29-2, pp. 36, 40).  Plaintiff deferred to Jones to determine the best approach to wire the compressor units. (Doc. 29-2, p. 36).

On June 25, 2014, Plaintiff told his supervisor, Ron House, that he needed help lifting some heavy objects because he had some pain in his shoulder. (Doc. 29-2, p. 47).  Plaintiff did not ask for any medical attention, but Mr. House notified Safety Director Cyndi Dees about the incident. (Doc. 29-2, p. 47, Doc. 29-4, ¶ 130).  Plaintiff did not go to a physician and did not provide any documentation of any work restrictions he had at the time. (Doc 29-2, p. 51, 54; Doc. 29-4, ¶ 13).  On the morning of November 27, 2014, Safety Director Dees, Elizabeth Byrd and Ron House had a follow up meeting with Plaintiff. (Doc. 29-4, ¶13).  During the meeting Plaintiff stated that he believed he had medical restrictions in place from his surgery in 2011 and he asked to see his doctor's records about the lifting restrictions on his arm. (Doc. 29-2, pp. 55-56, 59; Doc. 29-4, ¶ 13).  They told Plaintiff that he had been released to full duty and that if he felt that had changed he should see a physician. (Doc. 29-4, ¶ 13).  Plaintiff said he did not need to see a physician and that he was fit for duty. (Doc. 29-2, pp. 50-51, 58; Doc. 29-4, ¶ 13).

The next day, on June 26, 2014, Plaintiff was involved in a conflict with Robert Lee Jones. (Doc. 29-2, pp. 46-47).  Elizabeth Byrd heard Plaintiff and Jones engaged in a heated discussion and saw Jones leave the area. (Doc. 29-4, ¶ 7).  Byrd spoke to Jones about the incident. (Doc. 29-4, ¶ 8).  Jones reported that Plaintiff had unilaterally decided that he would do one task on each of three units and leave the

other tasks to be completed by Jones rather than both men working together on the same unit until it was completed, as was standard practice. (Doc. 29-4, ¶ 8). Byrd spoke to Plaintiff about the incident and Plaintiff informed Byrd that he did not want to do wiring anymore. (Doc. 29-4, ¶ 9). Byrd decided to give Plaintiff a written Employee Counseling Record to counsel him on the behavior that he needed to improve. (Doc. 29-4, ¶ 10). Byrd did not feel an Employee Counseling Record was necessary for Robert Lee Jones because Jones did not have a history of difficulties with co-workers and Jones had been trying to work in the normal teamwork method that the company encourages. (Doc. 29-4, ¶ 10).

The following day, Plaintiff again met with Byrd, along with the Vice President of Human Resources, Emily Jones, and the Vice President of Manufacturing, John Daw. (Doc. 29-4, ¶ 11). Plaintiff was verbally counseled about concerns over his lack of teamwork, communication, and cooperation in working with others. (Doc. 29-4, ¶ 11). Plaintiff was presented with the Employee Counseling Record, but he refused to read, sign, or add any written comments to the document. (Doc. 29-4, ¶ 11). Ms. Byrd and Mr. Daw explained to Plaintiff that participation in the counseling session and signing the form acknowledging his understanding of the expectation that he work well with others was required for his continued employment. (Doc 29-4, ¶ 12). Plaintiff still refused to cooperate or to sign the document. (Doc. 29-4, ¶ 12). Mr. Daw advised Plaintiff that if he continued to refuse he would not be allowed to continue working at the facility and that they would view his refusal as Plaintiff's decision to resign. (Doc. 29-3, p. 5; Doc. 29-4, ¶

12). Plaintiff refused to sign the document and was asked to leave the premises. (Doc. 29-3, pp. 6-7).

## DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the

court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." Vega v. Invsco Group, Ltd., 2011 WL 2533755, *2 (11th Cir. 2011).  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the

record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

## B. Plaintiff's Claims

Plaintiff is proceeding pro se and this Court will attempt to give his pleadings a very lenient reading.

> Courts do and should show a leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education. See, e.g., Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir.1990). Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, see Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir.1991), or to rewrite an otherwise deficient pleading in order to sustain an action, see Pontier v. City of Clearwater, 881 F.Supp. 1565, 1568 (M.D.Fla.1995).

GJR Investments Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998). Plaintiff "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure," the same as any other litigant. Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989).

Reading Plaintiff's pro se Complaint and his EEOC charge together, Plaintiff appears to assert an ADA claim that he was discriminated against on the basis of his injured shoulder when he was terminated in June 2014. Plaintiff's Complaint also asserts that Plaintiff needs surgery and that the company failed to help Plaintiff get further medical treatment. In his Complaint and motions for summary judgment, Plaintiff references issues concerning insurance coverage from Liberty

Mutual Insurance Company for surgery he reports he currently needs on his shoulder. However, Liberty Mutual Insurance Company is not a party to this action and it is unclear how the issues relate to Plaintiff's ADA claim against Quincy Compressor. If Plaintiff is attempting to assert an additional claim, separate from his ADA claim, that claim is barred unless it was asserted or arose out of the allegations in his EEOC charge. "A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Mulhall v. Advance Sec. Inc., 19 F.3d 586, 589 n. 8 (11th Cir. 1994). "In other words, judicial claims are allowed if they amplify, clarify or more clearly focus the allegations in the EEOC complaint, while allegations of new acts of discrimination are inappropriate." Russell v. City of Mobile, 2013 WL 1567372, *2 (S.D. Ala. April 12, 2013) (internal quotations omitted). "The purpose of this exhaustion requirement is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." Gregory v. Ga. Dept. of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004) (citations and internal quotations omitted). Plaintiff's insurance coverage issues are not based on the same allegations as his ADA claim and Plaintiff has not demonstrated or attempted to explained how his insurance claims could have grown out of his claim for discriminatory discharge. Accordingly, the Court finds that Plaintiff has asserted

only an ADA claim for discriminatory discharge.

## C. Discriminatory Discharge

The Americans with Disability Act ("ADA") 42 U.S.C. § 12112(a) prohibits

discrimination "against a qualified individual on the basis of disability…" 42 U.S.C.

§ 12112(a).  The Eleventh Circuit has explained that to establish a prima facie case

of disability discrimination under the ADA, a plaintiff must show that (1) he has a

disability; (2) he is qualified to perform the job; and (3) he was discriminated

against because of his disability.[3] Cleveland v. Home Shopping Network, Inc., 369

F.3d 1189, 1193 (11th Cir. 2004) (citing Williams v. Motorola, Inc., 303 F.3d 1284,

1290 (11th Cir. 2002); Gordon v. E.L. Hamm & Assoc., Inc., 100 F.3d 907, 910 (11th

Cir. 1996)).  If Plaintiff establishes a prima facie case, a presumption of

---

[3] The Court has found that Plaintiff asserted only a claim of discriminatory
discharge.  However, the Court notes that unlawful discrimination may also consist
of a failure to provide a reasonable accommodation for a disability if that
accommodation would enable the employee to perform an essential function of the
job. Lucas v. W.W. Grainger, Inc., 257 F.3d 1249 (11th Cir. 2001). Plaintiff has not
asserted that Defendant failed to provide a reasonable accommodation.  If a
disabled employee requires an accommodation to perform the essential functions of
his job, he must make "a specific demand for an accommodation" and must prove
that the proposed accommodation is reasonable.  See, e.g., Gaston v. Bellingrath
Gardens & Home, Inc., 167 F.3d 1361, 1363–64 (11th Cir. 1999). Plaintiff reportedly
asked for help lifting a heavy object because of pain in his shoulder.  However, if
Plaintiff had asserted a failure to accommodate claim based on that event, it would
not survive summary judgment.  There is no evidence that Defendant refused to
provide help or required Plaintiff to lift the heavy object and there is no evidence
that Plaintiff asked to be moved to a position that would not involve heavy lifting or
that he requested any other accommodation.  Plaintiff told management he was fit
for duty and did not request an accommodation of any kind.

discrimination arises and the burden shifts to Defendant to proffer a legitimate, non-discriminatory reason for the employment action. Id. (citation omitted). The defendant "simply has a burden of production" and does not need to persuade the Court that it was motivated by the reason. Id. (citation omitted). If Defendant meets its burden, then Plaintiff has the ultimate burden of proving that Defendant intentionally discriminated against him because of his disability and that the proffered reason was a pretext for discrimination. Id. (citation omitted).

Defendant asserts that Plaintiff has not established a prima facie case because he has not shown that he had a disability or that he was discriminated against because of a disability. Under the ADA, the term "disability" means:

(A)     a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B)     a record of such an impairment; or

(C)     being regarded as having such an impairment ….

42 U.S.C. § 12102(1).

Plaintiff appears to assert that he is disabled because of his shoulder. However, the evidence demonstrates that at the time of his discharge, Plaintiff's shoulder did not limit his ability to do his job. Plaintiff had been released to full duty on a trial basis beginning in January 2012. Plaintiff's doctor noted on Plaintiff's follow up visit in February 2012, that Plaintiff was doing well, his pain was controlled, his wound was benign, his range of motion was full, his strength

was normal, and that he had tolerated his return to duty. Plaintiff's physician then released Plaintiff to full duty. There is no record of Plaintiff having any impairment after February 2012 and no evidence that Plaintiff's supervisors or other personnel at Quincy Compressor regarded Plaintiff as having an impairment after February 2012. Plaintiff never presented any medical restrictions for his shoulder after February 2012 and according to supervisor Byrd, Plaintiff was assumed to be fully capable to perform all duties.

Plaintiff suggests that the Defendant Company knows about Plaintiff's condition by pointing to medical records and insurance correspondence or records of which he contends Quincy Compressor should be aware. However, the records and documents Plaintiff references appear to be of Plaintiff's condition prior to February 2012 and/or after his discharge. Plaintiff's condition prior to February 2012 or after his discharge is not relevant to Plaintiff's claim for discriminatory discharge. For Plaintiff's discharge to be "because of his disability," the Plaintiff must have been disabled or perceived as disabled at the time of his discharge. See Cash v. Smith, 231 F.3d 1301, 1306 n. 5 (11th Cir. 2000) (holding that subsequent change in plaintiff's medical condition was "irrelevant" to her ADA claim because courts "evaluate her disability as manifested at [the time of the alleged adverse employment action]").

Plaintiff complained of shoulder or arm pain on June 25, 2014, two days

13

before he was discharged.  However, Plaintiff did not ask for any medical attention, he did not go to a physician and did not present any documentation of any work restrictions he had at the time.  Plaintiff was advised that if he felt he should have restrictions he should see a physician, but Plaintiff stated that he did not need to see a physician and that he was fit for duty.

There is no evidence that Plaintiff was disabled or regarded as disabled at the time of his discharge and there is no evidence that Plaintiff's discharge was because of a disability.  Accordingly, Plaintiff has not established a <u>prima</u> <u>facie</u> case of discriminatory discharge.

Even if Plaintiff could establish a <u>prima</u> <u>facie</u> case, Defendant has proffered a non-discriminatory reason for the employment decision and Plaintiff has not shown that the proffered reason was merely pretext.  "At the pretext stage, in order to survive summary judgment, plaintiff must provide sufficient evidence to allow a reasonable fact finder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the employer's decision." <u>Miller v. Bed, Bath & Beyond, Inc.</u>, 185 F.Supp.2d 1253, 1270 (N.D. Ala. 2002) (citing <u>Combs</u>, 106 F.3d at 1538).  Plaintiff may do this  "(1) by showing that the employer's legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, a discriminatory reason more likely motivated the decision." <u>Id.</u> (citations omitted).  "This is done by pointing to 'such weaknesses, implausibilities,

inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence.'" Hamilton, 122 F. Supp.2d at 1281 (quoting Combs, 106 F.3d at 1539). The ultimate burden of persuasion remains with the plaintiff at all times in cases involving merely circumstantial evidence. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

In satisfying the ultimate burden of proving that the adverse employment action was on account of discrimination, a plaintiff need not establish that discrimination was the sole reason for the action, but that it was a determinative factor in the employer's decision. See Anderson v. Savage Laboratories, Inc., 675 F.2d 1221, 1224 (11th Cir. 1982) (citing Haring v. CPC International, Inc., 664 F.2d 1234, 1239-40 (5th Cir. 1981)). However, it should be noted that federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions." Chapman, 229 F.3d at 1030 (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)). It is not appropriate for either the plaintiff or this Court to "recast an employer's proffered non-discriminatory reasons or substitute his business judgment for that of the employer." Chapman, 229 F.3d at 1030.

In the instant case, Quincy Compressor contends that it terminated Plaintiff because he refused to participate in the counseling session or sign an Employee Counseling Record acknowledging that he understood that he was expected to work

15

well with others.  Plaintiff was advised that he must sign the form if he wanted to continue working there, but he refused.  Plaintiff's own testimony, as well as the allegations of his Complaint, asserts that he was told that if he did not sign the document he would be considered to have quit his job.  Plaintiff admits that he refused to sign the document and he was thereupon escorted off the premises.

Plaintiff may dispute whether the counseling session or an Employee Counseling Record was warranted.  However, it is undisputed that Plaintiff had a history of conflicts with his co-workers and there is no evidence that other employees were treated differently under similar circumstances.  The employee Plaintiff had a conflict with on June 26, 2014, did not receive an Employee Counseling Record, but that employee did not have a history of difficulties with co-workers.  Even if the Court believed Quincy Compressor was wrong to conclude that Plaintiff deserved counseling or a written Employee Counseling Record,[4] as stated above, the Court cannot substitute its judgment for that of the Defendant.  An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Communication, 738 F.2d 1181, 1187 (11th Cir. 1984).

---

[4] This Court finds no evidence that Quincy Compressor used poor judgment.

**CONCLUSION**

For the reasons stated above, Defendant's motion for summary judgment

(Doc. 27) is **GRANTED**.   Plaintiff's motions for summary judgment (Doc. 31 & Doc.

38) are **DENIED**.

      **DONE** and **ORDERED** this 14th day of September, 2016.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE